IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| DARRYL THOMPSON, | ) Civil Action No. 3:06-1020-JFA-JRM |
| Plaintiff, | ) |
| vs. | ) |
| SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

Plaintiff, Darryl Thompson ("Thompson") filed this action in the Court of Common Pleas for Richland County on February 21, 2006. Defendant South Carolina Department of Corrections ("SCDC") removed this action to this court on March 31, 2006. Thompson alleges a claim for retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").[1] SCDC filed a motion for summary judgment on February 13, 2007. Thompson did not respond to the motion for summary judgment.[2]

## SUMMARY JUDGMENT STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

[2] The undersigned has addressed Plaintiff's claims on the merits. Alternatively, it is recommended that Plaintiff's claims be dismissed pursuant to Rule 41(b), Fed. R. Civ. P., for failure to prosecute.

special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex

Corp., supra. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Servs. Co., 80 F.3d 954 (4th Cir. 1996).

## FACTS

1. Thompson, an African-American male, began working for SCDC in August of 1990 as a Corrections Officer. Complaint, Para. 8.

2. Plaintiff was terminated from employment with SCDC in 1995 and he was rehired in 1997. Plaintiff's Dep. 12.

3. In about 1995, Thompson was diagnosed with diabetes. Complaint, Para. 9.

4. On June 29, 1998, Thompson received a written warning for excessive use and/or abuse of sick leave, and was placed on probation for thirty days. Ex. 3,[3] Employee Corrective Action.

5. On August 18, 2001, Lieber Correctional Institution ("LCI") Captain William Dodson, Jr. ("Dodson") informed Plaintiff that because of his questionable use of previous sick leave, he would have to submit a doctor's excuse for any sick days used from August 8, 2001 until January 1, 2002. Ex. 3, Memorandum to Thompson from William Dodson, Jr.

6. On August 30, 2001, Thompson was informed that if his sick leave reached a zero balance, he would have to provide a certificate from a physician before leave would be approved. Ex. 5, Memorandum to Thompson from Dodson.

---

[3]"Ex. ___" refers to exhibits to SCDC's motion for summary judgment.

7. SCDC informed Thompson on December 14, 2001, that a correction action was pending against him because he called in sick (on December 4 and 5, 2001), and did not provide a doctor's excuse as directed by his supervisors. He was also informed that he was again suspected of abusing sick leave. Ex. 6, Memorandum to Thompson from Dodson.

8. On January 14, 2002, Thompson received a written warning for refusal to carry out a supervisor's directive and excessive use and/or abuse of sick leave. He was placed on probation for ninety days. Ex. 7, Employee Corrective Action.

9. In February 2003, SCDC changed its call-in procedures. Ex. 7, Memorandum to All Lieber Security Personnel from LCI Acting Major Thierry Nettles.

10. On May 23, 2003, SCDC informed Thompson that he had not complied with the call-in procedures for sick leave. He was also advised that he had exhausted his sick leave, and needed to make a request to use his annual leave. SCDC required Thompson to submit doctor's excuses for all days he was absent after March 22, 2003. Ex. 9, Letter from LCI Warden Stan Burtt ("Burtt") to Thompson.

11. On June 2, 2003, Thompson continued to fail to comply with the call-in procedures. Although he provided doctor's excuses for some of his absences, SCDC required Thompson to submit doctor's excuses that were inclusive of all of the days he was absent from work. Thompson was placed on leave without pay because he failed to submit the required documentation. Ex. 10, Letter from LCI Associate Warden McKither Bodison to Thompson.

12. Thompson was informed on June 24, 2003, that he had exceeded the maximum annual leave usage for 2003. SCDC requested that Thompson submit doctor's excuses or missed work excuses for approval, or he would be required to reimburse SCDC for unauthorized leave

used.  Ex. 11, Memorandum from Betty Diehl (of SCDC's Leave Section, Human Resources) to Thompson.

13. On July 14, 2003, Thompson received a written warning for violation of written rules, regulations, or policies; excessive use and abuse of sick leave; and unauthorized absence. Ex. 12, Employee Corrective Action.

14. Thompson never submitted the requested documentation, and, as a result, he was not allowed to use his remaining annual leave.  SCDC also placed him on thirty days probation and leave without pay.  Ex. 13, letter from Burtt to Thompson.

15. On August 4, 2003, Plaintiff received another written warning, was placed on probation, and was suspended for eight hours for violation of written rules, regulations, and policies and for unauthorized absence from work.  Ex. 14, Employee Corrective Action.

16. In October 2003, Plaintiff filed a lawsuit against SCDC, alleging racial harassment (hostile work environment) in violation of Title VII.  Complaint, Para. 14.

17. On November 4, 2003, Thompson was placed on a twenty-four hour suspension and placed on a ninety-day probation period for violation of written rules, regulations, or policies.  Ex. 15, Employee Corrective Action.

18. On April 1, 2004, SCDC again suspended Thompson for a violation of written rules, regulations, or policies and for unauthorized absence from work.  Ex. 16, Employee Corrective Action.

19. Warden Burtt and Captain Dobson were deposed on August 17, 2004, in conjunction with the October 2003 lawsuit.  Complaint, Para. 15.

20. Thompson was terminated from his employment with SCDC on September 13, 2004. Plaintiff's Dep. 13; Ex. 17, Employee Corrective Action.

21. Thompson exhausted his administrative remedies by appealing his termination decision to the South Carolina State Employee Grievance Committee. The panel rejected Thompson's appeal and affirmed SCDC's disciplinary action. Complaint, Para., 3; Ex. 19.

22. A Charge of Discrimination was filed by Thompson with the Equal Employment Opportunity Commission. Thompson received a right to sue letter, dated November 23, 2005, on or about November 28, 2005. Complaint, Paras. 4 and 5.

## MOTION FOR SUMMARY JUDGMENT

Thompson alleges that SCDC retaliated against him (by terminating him) for filing a lawsuit in October 2003, alleging racial discrimination. SCDC contends that it is entitled to summary judgment because: (1) Thompson has no evidence to rebut SCDC's legitimate, non-retaliatory reason for terminating Thompson based on his continual violation of SCDC policies and excessive and abusive use of sick leave, and (2) Thompson's claim of retaliation fails as a matter of law because he has no evidence of a causal connection between the filing of the first lawsuit against SCDC and his termination.

    A.    <u>Prima Facie Case</u>

SCDC contends that Thompson cannot establish a prima facie case because he fails to show a causal connection between Thompson's protected activity (filing the previous lawsuit) and the adverse action (termination). Thompson appears to allege that he has shown a causal connection because he was terminated shortly after Warden Burtt's deposition was taken in the previous action.

To establish a prima facie case of retaliation under Title VII, an employee must demonstrate that:

1)  the employee engaged in protected activity;[4]

2)  the employer took some adverse employment action against the employee; and

3)  a causal connection existed between the protected activity and the adverse action.

See Haulbrook v. Michelin North America, Inc., 252 F.3d. 696, 706 (4th Cir. 2001)(ADA); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)(ADEA and Title VII); Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994)(Title VII).  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).  If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

Thompson fails to establish a prima facie case of retaliation because he has not established a causal connection between his alleged protected activity (filing the previous lawsuit) and his termination.  The Fourth Circuit has held that a causal connection, for purposes of demonstrating a prima facie case exists, where the employer takes adverse employment action against an employee shortly after learning of the protected activity.  Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir.1989).  Generally, however, the passage of time tends to negate this inference.  See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, (2001) (per curiam) (citing cases); Dowe v. Total

---

[4] Under Title VII, a plaintiff need not have filed a formal complaint with the Equal Employment Opportunity Commission or a state deferral agency to engage in a protected activity. Complaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal complaints, filing of internal grievances, and complaints to an agency are included within the definition of protected activity.  Warren v. Halstead Indus., Inc., 802 F.2d 746, cert. denied, 487 U.S. 1218 (1988) and Mitchell v. Baldrige, 759 F.2d 80 (D.C. Cir. 1985).

7

Action Against Poverty, 145 F.3d 653, 657 (4th Cir.1998).  Here, Thompson fails to establish a causal connection based on proximity alone, as the protected activity (October 2003) occurred more than a year prior to his termination (September 2004).  See, e.g., Pascual v. Lowe's Home Centers, Inc., 193 Fed. Appx. 229, 232 (4th Cir. 2006)(holding that three to four months between the termination and protected activities is too long to establish a causal connection by temporal proximity alone); Garrett v. Lujan, 799 F. Supp. 198, 202 (D.D.C.1992)(concluding that the passage of nearly a year precluded an inference of causal connection); Parrott v. Cheney, 748 F. Supp. 312 (D.Md.1989) (even the passage of as little as five months between filing EEOC complaint and adverse action may be enough to negate causal connection in a particular factual context), aff'd per curiam, 914 F.2d 248 (4th Cir.1990).

Thompson's basis for asserting that Burtt retaliated against him is his belief that Burtt was racially prejudiced and that his termination occurred shortly after Burtt's deposition was taken in the previous lawsuit.  Thompson, however, testified that he was not present during Burtt's deposition, nor did Burtt ever say anything to Thompson about the deposition.  Plaintiff's Dep. 66-67, 71.

### B.      Legitimate, Non-Discriminatory Reason/Pretext

Even if Thompson could establish a prima facie case of retaliation, SCDC has articulated a legitimate, non-discriminatory reason for terminating Thompson and Thompson fails to show pretext.  SCDC contends that Thompson was terminated for violation of SCDC policies relating to sick leave.  Robin Gracien, Chief of the Employee Relations Branch of the Division of Human Resources for SCDC, wrote:

> You have an extensive history of calling in sick and have missed over 1,000 hours of work in calendar year 2004 alone.  You have been unable to provide

> documentation from a treating physician indicating you have a condition that would prevent you from working for this length of time. In addition, you have failed to provide repeated requests for information outlined in the employee leave policy in order to grant a leave of absence without pay when your sick leave exhausted.
>
> Based on this information along with your prior disciplinary record, I must inform you that your employment with the South Carolina Department of Corrections is terminated effective close of business September 13, 2004.

Ex. 18.

There is an extensive record of disciplinary actions taken against Thompson, beginning well before he filed the previous lawsuit. He received written warnings and was placed on probation regarding his violation of SCDC leave policies and call-in procedures on June 29, 1998; January 14, 2002; July 14, 2003; and August 4, 2003. He was placed on an eight-hour suspension on August 4, 2003. Exs. 3, 7, 12, and 14. Additionally, SCDC explained in writing to Thompson what was required of him regarding his use of sick leave on August 18, 2001; August 30, 2001; December 14, 2001; May 23, 2003; June 2, 2003; June 24, 2003; and July 14, 2003. Exs. 4-6, 11, 13. After filing the October 2003 lawsuit, problems concerning failure to follow SCDC policies and procedures continued. Thompson received a twenty-four hour suspension on November 4, 2003, and a forty hour suspension on April 1, 2004. Exs. 15 and 16. SCDC also explained the policy regarding sick leave on October 7, 2003; October 28, 2003; November 4, 2003; and March 26, 2004. Exs. 20-23.

In his deposition, Thompson did not deny that he was absent on the days submitted by SCDC in its letters to him, nor did he deny that he did not follow the call-in procedures when he was absent because of illness. Additionally, Thompson did not deny that he did not submit a physician's certification inclusive of all of the days he was absent because of illness. Plaintiff's Dep. 37-39, 45, 51.

9

In his deposition, Thompson argued that SCDC interpreted SCDC policy incorrectly in requiring him to submit physician's certifications for each day he attempted to use sick leave. Plaintiff's Dep. 37-39. Merely questioning the merits of SCDC's decision, however, does not show that the articulated reason for Thompson's termination was false or was not the real reason for the action. See, e.g., Hawkins v. PepsiCo, Inc., 203 F.3d 274 (4th Cir. 2000); Kun v. Berkeley County Gov't, 214 F.Supp.2d 559, 566 (D.S.C. 2001), aff'd, 32 Fed. Appx. 689, 2002 WL 570670 (4th Cir. Apr. 17, 2002). Federal Courts "do not sit as a 'super-personnel department weighing the prudence of employment decisions' made by the defendants." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248 (4th Cir. 2005), citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir.1998); see also Rowe v. Marley Co., 233 F.3d 825, 831 (4th Cir. 2000)("The decision to discharge [plaintiff] and retain [other employees] is the kind of business decision that we are reluctant to second-guess."); see also Swanson v. General Servs. Admin., 110 F.3d 1180, 1186 (5th Cir. 1997)(holding that "[t]he pretext question is not a question whether [the plaintiff] 'considered himself' late, but whether [the employer] considered [the plaintiff] late when he decide to charge [the plaintiff] with annual leave for his tardiness").

## CONCLUSION

Based on the foregoing, it is recommended that Defendant's motion for summary judgment (Doc. 21) be granted.

          Respectfully submitted,

          s/Joseph R. McCrorey
          United States Magistrate Judge

May 18, 2007
Columbia, South Carolina